# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1334


**JENNIFER STEWART**

**VERSUS**

**HAROLD G. STEWART**


**********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 63,090
HONORABLE STEPHEN BRUCE BEASLEY, DISTRICT JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of John D. Saunders, Oswald A. Decuir, and Marc T. Amy, Judges.


**AFFIRMED**



**James Ogden Middleton  II**
**Attorney at Law**
**1744 White Street**
**Alexandria, LA 71301**
**(318) 443-4377**
**COUNSEL FOR PLAINTIFF APPELLANT:**
     **Jennifer Stewart**

**Ronald D. Brandon**
**Attorney at Law**
**P. O. Box 216**
**Many, LA 71449**
**(318) 256-5910**
**COUNSEL FOR DEFENDANT APPELLEE:**
**Harold G. Stewart**

**SAUNDERS, J.**

Appellant appeals the judgment of the trial court awarding joint legal custody, shared physical custody, co-domiciliary status to each parent, orders that the child remain at his current elementary school, and orders family counseling. We find that the trial court did not abuse its discretion as to the custody decree. Accordingly, we affirm the judgment of the trial court.

**FACTS & PROCEDURAL HISTORY**

This appeal concerns the custody arrangement of a minor child, S.S., who is now six years old. The Sabine Parish School Board has determined that S.S. is developmentally delayed, according to its last evaluation in 2010, and S.S. participates in the special education program at Zwolle Elementary School in Many, Louisiana. Appellee, Harold Gabriel Stewart (hereinafter "Appellee"), sells tires for his parents' business and operates the former community enterprise lawn care business. Appellee pled guilty to a felony, is serving five years of supervised probation, one result of which is $7,316.03 paid in restitution to the Louisiana Department of Public Safety and Corrections, Office of Motor Vehicles. Appellee filed for divorce from the child's mother, Jennifer Marie Stewart (hereinafter "Appellant"), and for custody of S.S. on August 16, 2010. Appellant is a teacher with a master's degree in education. During the divorce and custody proceedings, Appellant filed multiple Petitions for Protection from Abuse under the Domestic Abuse Act setting forth allegations of abuse and violence against Appellee. Each of these petitions was denied.

On August 18, 2010, the Court ordered interim shared physical custody, with the father having custody one week and the mother having custody the next week, on an alternating basis. On September 20, 2010, the parties agreed in court that each parent and S.S. would undergo a mental health evaluation. They also

agreed to an interim order continuing the visitation schedule on a week to week basis. The trial court appointed Louis Lowrey, M.A. (hereinafter "Lowrey"), a licensed professional counselor and marriage and family therapist, as evaluator in the case.

On March 3, 2011, the parties appeared in court for a hearing on the final divorce, which was granted to Harold on the grounds of adultery on part of Appellant. The custody hearing was held on June 16 and 17 of 2011. After two days of testimony, the trial court rendered a judgment to the following effects: joint legal custody of S.S. by each party, shared physical custody of S.S. on an alternating weekly basis, co-domiciliary status of each parent, that S.S. shall remain at his current school, and that the parties shall attend and participate in family counseling and shall split the costs thereof. It is from this judgment that the Appellant appeals. We affirm the judgment of the trial court for the reasons discussed herein.

**ASSIGNMENTS OF ERROR**

1. By ordering a co-domiciliary legal custody regime, the trial judge misapplied La.R.S. 9:335 in the conspicuous absence of a Joint Plan of Implementation or a finding of good cause for such omission. Such legal error requires a de novo review of the record, or, at the very least, a reversal and remand.

2. By failing to engage in the analysis required by La.Civ. Code art. 134 by omitting any discussion of one of the 12 factors set forth therein in light of the evidence adduced. Such legal error requires a de novo determination of the ignored factors in light of the record, or, in the alternative, a reversal and remand.

3. Without engaging in any articulated review of the record and the factors listed in La.Civ. Code art. 134, the trial court clearly abused its discretion in its custody award with respect to the parents alternating physical custody of the special needs child every other week and in its failure to designate a domiciliary parent.

4. By refusing to exclude the testimony of the court[-]appointed mental health evaluator in light of the objections lodged due to

2

the absence of any specialized training in custody evaluations coupled by egregious professional negligence.

5. By unreasonably rejecting the testimony of Dr. James R. Logan on the need to carefully tailor the physical custody plan for this special needs child in this case to ensure stability in the child's life and designate a domiciliary custodian empowered to make the educational, medical and educational decisions for SS.

## LAW AND ANALYSIS

A court of appeal cannot set aside a finding of fact of the trial court unless it is manifestly erroneous or clearly wrong. *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989). If the findings of fact are reasonable in light of the evidence viewed entirely, an appellate court may not reverse those findings even if it would have weighed the evidence differently. *Id.* Specifically,

> [t]he standard of review in child custody matters has been clearly stated by this court:
>
> The trial court is in a better position to evaluate the best interest of the child from its observances of the parties and witnesses; thus, a trial court's determination in a child custody case is entitled to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion.
>
> *Hawthorne v. Hawthorne*, 96-89, p. 12 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, 625, *writ denied*, 96-1650 (La.10/25/96), 681 So.2d 365.

*Gremillion v. Gremillion*, 07-492, p. 4 (La.App. 3 Cir. 10/3/07), 966 So.2d 1228, 1231-32, *writ denied*, 10-2125 (La. 12/10/10), 51 So.3d 726.

In her first assignment of error, Appellant argues that the trial court erred as a matter of law by incorrectly applying La.R.S. 9:335, thereby requiring a *de novo* review of the record, or, alternatively, reversal and remand. Specifically, she argues that the court erred by appointing the parents co-domiciliaries without issuing an implementation plan or finding good cause for such an omission. We disagree with this assignment of error, and affirm the judgment of the trial court.

3

Joint custody decrees are governed by La.R.S. 9:335, which states in pertinent part:

> A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
> (2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
> (b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
> (3) The implementation order shall allocate the legal authority and responsibility of the parents.
>
> B. (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.
> (2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.
> (3) The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.

La.R.S. 9:335.

This is an issue *res nova* for this court. We recognize that our brethren from the first circuit in *Caro v. Caro* stated "La.R.S. 9:335 does not require a specific form be used for the implementation plan." 95-0173, p.3 (La.App. 1 Cir. 10/6/95), 671 So. 2d 516, 518. The court there held that the judgment awarding joint custody, designating a domiciliary parent, ordering visitation, and setting holiday schedules qualified as the implementation order. *Id.* "The fact that the order was not entitled 'implementation plan,' is of no consequence." *Id.* *See also Angelette v. Callais*, 10-2279 pp. 4-5 (La.App. 1 Cir. 5/6/11), 68 So.3d 1122, 1125 (reiterating that La.R.S. 9:335 does not require that a specific form be used for the implementation plan, and that a joint custody decree may serve as the

implementation plan). Furthermore, the first circuit in *Caro* explained that decision-making authority not addressed in the judgment is covered by the La.R.S. 9:335B(3), which "gives the domiciliary parent authority for any decision not provided for in the implementation plan." *Caro* at 518.

In the instant case, the trial court issued a joint custody decree which includes the following:

> AFTER DUE AND REVERENT CONSIDERATION OF THE LAW, FACTS, EVIDENCE, TESTIMONY, SUBMISSIONS AND ARGUMENTS OF LEARNED COUNSEL, IT IS ORDERED, ADJUDGED AND DECREED that:
>
> 1. The parties shall enjoy **joint legal custody** of the subject child;
> 2. The parties shall enjoy **shared physical custody** of the subject child on an alternating weekly schedule;
> 3. Each party shall enjoy **co-domiciliary status**;
> 4. The subject child shall remain enrolled at **Zwolle Elementary School**; and
> 5. The parties shall attend and participate in family counseling with **Robin D. Miley, PLC**, P.O. Box 7354, Nachitoches, Louisinana 71457-7354, 318.238.2442, with costs thereof equally divided between the parties.

This joint custody decree assigns legal and physical custody, co-domiciliary status, addresses the child's education, and orders the parties to attend family counseling. We find that the judgment in the record, dictating logistics of the custody arrangement as it does, qualifies as an implementation plan for the purposes of La.R.S. 9:335. *Caro* at 518. We also find that the decision-making authority not addressed in the joint custody decree resides with the two parents as co-domiciliaries. *Id.* For these reasons, we find that the trial court did not abuse its discretion in failing to issue an implementation plan in addition to the joint custody decree.

Appellant, in her second assignment of error, argues that the trial court erred by failing to engage in the analysis required by La.Civ. Code art. 134, in that the

court did not include any discussion of one of the twelve relevant factors set forth therein in light of the evidence adduced. We find no merit in this contention.

> "The wording of Article 134 illustrates that the court is not bound to make a mechanical evaluation of all factors listed." *Breaux v. Breaux*, 96-214, p. 4 (La.App. 3 Cir. 7/17/96); 677 So.2d 1106, 1108. Rather, "[e]ach case should be decided on its [own] facts in light of these factors." *Id*. Absent a clear showing of an abuse of discretion, an award of custody by a trial court will not be disturbed. *Mayeux v. Mayeux*, 93-1603 (La.App. 3 Cir. 6/1/94); 640 So.2d 686.

*Gautreau v. Gautreau*, 96-1548, p.6 (La.App. 3 Cir. 6/18/97), 697 So.2d 1339, 1345, *writ denied*, 97-1939 (La. 11/7/97), 703 So.2d 1272.

In the case *sub judice*, the trial court's judgment did not contain a detailed explanation of its reasons for judgment. Had Appellant so desired, she could have requested reasons from the court. La.Code Civ.P. art. 1917 provides in pertinent part:

> A. In all appealable contested cases, other than those tried by a jury, the court when requested to do so by a party shall give in writing its findings of fact and reasons for judgment, provided the request is made not later than ten days after the mailing of the notice of the signing of the judgment.

La.Code Civ.P. art. 1917.

Appellant did not request findings of fact and reasons for judgment. Moreover, no exhaustive analysis of La.Civ. Code art. 134 is required under the law. *Gautreau* at 1345. Accordingly, we find that the trial court did not abuse its discretion in failing to include an analysis of the factors listed in La.Civ. Code art. 134 in its judgment.

In her third assignment of error, Appellant argues that the trial court erred by ordering weekly alternating physical custody of S.S. and by failing to designate only one domiciliary parent. We reject this argument.

An award of joint custody along with the allocation of physical custody is governed by the following:

6

[T]he legislature amended La.R.S. 9:335(A)(2)(b) in 1995 and it now reads as follows: "To the extent feasible and in the *best interest of the child*, physical custody of the children *should* be shared equally." (emphasis added). This amendment, by adding the phrase "and in the best interest of the child" and substituting "should" for "shall," strengthens the best interest of the child standard as the primary concern in custody determinations.

....

We decline to adopt the assertion that the law mandates an equal sharing of physical custody. La.R.S. 9:335(A)(2)(b) does not put the two on equal footing. That portion of the statute reads, "[t]o the extent it is ... in the best interest of the child, physical custody of the children should be shared equally." La.R.S. 9:335(A)(2)(b). Clearly, a prerequisite for the equal sharing of physical custody is that it be in the best interest of the children.

*Brown v. Brown*, 96-743, pp. 5-6 (La.App. 3 Cir. 2/26/97), 692 So.2d 458, 460-461.

"In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child." La.Civ. Code art. 131. The factors to consider when determining the best interest of the child include the following:

(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.

7

(12) The responsibility for the care and rearing of the child previously exercised by each party.

La.Civ. Code art. 134.

Here, both of the parties live in Sabine Parish, and S.S.'s elementary school is there as well. The record indicates that both parents were actively involved in S.S.'s life prior to divorce. For example, the father bathed S.S. and put him to bed on many nights. The mother teaches at his school and actively participates in S.S.'s educational and behavioral development. Based on these facts, it appears that the trial court did not abuse its discretion by designating such an arrangement.

We now turn to the co-domiciliary status issue. Appellant points out that both the second and fourth circuits have held that the law does not allow for a designation of co-domiciliary parents. The fourth circuit in *Moloney v. Harris* explains:

> The trial court herein ordered that "the parties are designated co-domicilary parents and shall communicate as it relates as to the health, education, welfare of the minor child." This designation does not comply with the mandate of La.R.S. 9:335(B) that the court "shall designate a domiciliary parent." Although La.R.S. 9:336 provides that "[j]oint custody obligates the parents to exchange information concerning the health, education, and welfare of the child and to confer with one another in exercising decision-making authority," we find no authority for the court to designate the parties as co-domiciliary parents. *See Ketchum v. Ketchum*, 39,082, p. 11 (La.App. 2 Cir. 9/1/04), 882 So.2d 631, 639 (noting that there is "no authority in the law for a designation of 'co-domiciliary' parents.")

*Molony v. Harris*, 10-1316, pp. 19-20 (La.App. 4 Cir. 2/23/11), 60 So.3d 70, 82.

We respectfully note the holdings of our brethren courts, but we find that a designation of co-domiciliary parents is within the trial court's authority pursuant to La.R.S. 9:335. If a designation of co-domiciliary parents is in the best interest of the child, then we see no reason to reverse such a decision of the trial court.

8

Here, the parents have a bitter relationship and do not share the same opinions on a number of matters surrounding S.S.'s upbringing. This factor weighs against co-domililiaryship of the parents, since in sharing authority equally, they must agree in order for a decision to be made.

However, each parent is able to provide a stable and adequate environment for S.S. Each parent has a permanent home for S.S, and each parent actively participated in S.S.'s life prior to the decline of the parents' relationship. Furthermore, the community property issues between the parents have not yet been resolved. These factors weigh strongly in favor of the co-domiciliary parent designation. We find, then, that the trial court did not abuse its discretion in assigning co-domiciliary status to each parent.

In her fourth assignment of error, Appellant argues that the trial court erred by failing to exclude the report, testimony, and opinions of the court-appointed mental health professional in the case. Particularly, Appellant claims that the court-appointed expert was unqualified under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and La.Code Evid. Art. 702. We find no merit in this contention.

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

La.Code Evid. art. 702.

This court in *State v. Brannon* explains how experts' qualifications are tested in Louisiana:

> In *State v. Foret*, 628 So.2d 1116 (La.1993), the Louisiana [s]upreme [c]ourt adopted the test set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), regarding proper standards for the admissibility of expert testimony which requires the trial court to act in a gatekeeping function to ensure that any and all

scientific testimony or evidence admitted is not only relevant, but reliable. *State v. Chauvin*, 02-1188 (La.5/20/03), 846 So.2d 697. To assist the trial courts in their preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can properly be applied to the facts at issue, the Supreme Court suggested the following general observations are appropriate: 1) whether the theory or technique can be and has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the known or potential rate of error; and 4) whether the methodology is generally accepted by the relevant scientific community. *Daubert*, 509 U.S. at 592-594. In *Foret*, *supra*, the court adopted these observations as a helpful guide for our lower courts in considering this difficult issue. *Id.* Thus, Louisiana has adopted *Daubert's* requirement that in order for technical or scientific expert testimony to be admissible under La.Code Evid. 702, the scientific evidence must rise to a threshold level of reliability. *Daubert's* general "gatekeeping" applies not only to testimony based upon scientific knowledge, but also to testimony based on "technical" and "other specialized knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, (1999); *Independent Fire Ins. Co. v. Sunbeam Corp.*, 99-2181 (La.2/29/00), 755 So.2d 226. The trial court may consider one or more of the four *Daubert* factors, but that list of factors neither necessarily nor exclusively applies to all experts or in every case. *Id.* Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determinations. *Kumho*, *supra* at 526 U.S. 142.

*State v. Allen*, 41,548, pp. 11-13 (La.App. 2 Cir. 11/15/06), 942 So.2d 1244, 1254-55.

*State v. Brannon*, 07-431 (La.App. 3 Cir. 12/5/07), 971 So.2d 511, 517-18 *writ denied*, 07-2465 (La. 5/9/08), 980 So.2d 689.

Here, Appellant points to the fact that the court-appointed mental health professional, Lowery, prior to this case had never served as an expert custody evaluator. She also notes that Lowrey has not attended seminars that trained him specifically to serve as a custody evaluator. However, Lowrey is a licensed professional counselor and a licensed marriage and family therapist. He has testified as an expert in marriage and family therapy in the trial court below and other district courts across the state. He earned a master's degree in counseling and additional training as a qualified divorce mediator from the College of Law at Loyola University New Orleans. Due to these factors, we find that Lowrey was

10

qualified to serve as an expert in the case. Accordingly, we find that the trial court did not abuse its discretion by including Lowrey's testimony, report, and opinions in considering the case.

In her last assignment of error, Appellant contends that the trial court erred by disregarding the testimony of Dr. James R. Logan, Ph.D. We reject this final contention. As Appellee explains in his brief, Dr. Logan was tendered without objection as an expert in psychology. Appellant attempted to have Dr. Logan recognized as an expert in the field of developmental disabilities, which was objected to by Appellee. The trial court did not allow Dr. Logan as an expert in developmental disabilities due to lack of evidence thereof. Dr. Logan's testimony did not reveal that he had any significant experience in dealing with children that would qualify him to being an expert in this specialized field. At trial, the court noted that for many years, Dr. Logan served as a director, doing more administrative tasks like coordinating psychiatric consultations and chairing the group that formulated guidelines for developmental disabilities, rather than dealing with patients first-hand. Based on this evidence and on the record before us, we find it reasonable that the trial court refused to qualify Dr. Logan in the field of developmental disabilities. Accordingly, the trial court did not abuse its discretion.

**CONCLUSION**

We find that the trial court did not abuse its discretion as to any of Appellant Jennifer Marie Stewart's assignments of error. The joint custody decree serves to function as an implementation plan specifying the custody arrangements for the child S.S. The co-domiciliary parent designation is upheld as in the best interest of the child. The trial court's appointment of expert Mr. Louis Lowery, P.L.C. is also upheld, as is the refusal of the trial court to qualify Dr. James R. Logan as an

expert in the specialized field of developmental disabilities. All costs of appeal are assessed to Appellant Jennifer Marie Stewart.

**AFFIRMED.**