ROSEMARY LEDET, Judge.
|,This is a -contentious child custody case. From a judgment awarding joint shared custody of the minor children and designating the mother, Patricia Hotard Moreau, as domiciliary, parent, the father, Lyle Moreau, appeals.[1] For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On November 6, 1993, the parties were married. Thereafter, the’ parties established their matrimonial domicile in Orleans Parish. Four children were born of the marriage — Sarah Moreau (born on November 9, 1995); Foster Moreau (born on May 6, 1997); Patricia “Claire” Moreau (born on September 28,1999); and Lillian “Lilly” Moreau (born on December 24, 2002).[2]
On June 4, 2012, Mr. Moreau filed Petition for Divorce pursuant to La. C.C. art. 103. In his petition, he requested that the *821 parties .be awarded joint shared |2custody and that either both parents or neither parent be designated as the domiciliary parent. He also requested that the trial court set a specific custody schedule. On October 5, 2012, Ms. Moreau filed an answer and reconventional demand seeking joint custody and requesting she be named domiciliary parent.
On October 23, 2012, and October 31, 2012, the parties entered into'written stipulations, which included temporary physical custody schedules.[3]
On December 19, 2012, Mr. Moreau filed a rule for contempt or alternatively, for the appointment óf a custody evaluator. On April 24, 2013, the trial court appointed Dr. Karen van Beyer pursuant to La. R.S. 9:331.[4] On May 23, 2013, the trial court rendered, a judgment of divorce. On that same date, the parties entered into a consent judgment that gave Mr. Moreau custody of all of the children overnight every Wednesday and every other weekend from Friday after | .^scheduled activities until Monday morning, which was to remain in effect until school began.
In her October 6, 2013 report, Dr. van Beyer recommended the following:
• Lyle and [Patricia] should continue to share joint custody of their children— They should consult with each other about all major decisions in their children’s lives.
• That [Patricia] be named domiciliary custodian of the children with the firm directive that she confer with- Lyle in making any major decision for the children.The children would benefit .from shared custody but at this point in time, it is not likely that their parents could agree to this.
• The children should live in each home 50% of the time on a week by week basis. Sarah and Foster should continue to have the flexibility that allows each to. decide which home they will spend the evening and night in during the school week, but they should know that they “officially” live in the two homes... Thus on their father’s week they can spend school nights with their mother and on their mother’s week, they can spend school nights with their father. All four children should be required to spend alternating weekends in each parent’s home.
• Lilly should spend alternating weeks in each parent’s home.
*822 On September 18, 2013, the trial court entered an interim custody judgment, which granted Mr. Moreau custody of the children every Wednesday, beginning after school ends and ending at 8:00 p.m. that evening, and every other weekend from Friday after school ends until Monday morning.
On November 21, 2013, the first day the custody trial was held, Dr. van Beyer and Mr. Moreau testified. On December 13, 2013, the parties entered into an interim consent judgment, which stated the following:
• [T]he parties will continue to have joint custody of the minor children, specifically reserving for future determination the designation of the domiciliary parent.
[t* Patricia Hotard Moreau shall maintain physical sole custody of the minor children at all times not specifically designated to Lyle Moreau herein.
• [Bjeginning December 19, 2013, Lyle Moreau shall have physical custody of the minor children every other weekend from Thursday, at 5:30 p.m., until Sunday at 6:00 p.m.
• Lyle Moreau shall have physical custody of the minor children every Wednesday, from their release from school until 8:00 p.m.
• [Bjeginning Wednesday, December 25, 2013, and every other Wednesday thereafter, Lyle Moreau shall have physical custody of their minor children overnight, until they are returned to school on Thursday.
• [Tjhe custodial schedule contained herein shall be open and liberal with regards to the parties’ minor children, [Foster] and [Claire].
On August 12, 2014, Dr. van Beyer and the parties testified.[5] On that same date, the trial concluded and the trial court judge held a meeting in chambers with the parties and their counsel. Immediately thereafter, the trial court rendered its ruling.
On December 15, 2014, the trial court issued judgment, stating that “the parties shall continue to share joint custody of the minor children with Patricia Moreau as the designated domiciliary parent.” The judgment further provided as follows:
• Lyle Moreau shall have physical custody of the minor children on alternative weekends from Thursday, at 6:00 p.m., when the children are picked up from Patricia Moreau’s home, until Sunday at 6:00 p.m., when they are picked up from Lyle Moreau’s home; and on every Wednesday before his non-custodial weekend by picking them up from school that afternoon until he returns them to school on the following morning.
[• Any aspect of the custody agreement can be changed by mutual agreement of the parties. Both parties shall be flexible and particularly taking into consideration of the children’s wishes.
• The children shall not be forced to attend this visitation; however, they should all be encouraged to spend this time with their father.[6]
• The parties shall share holidays, alternating even and odd years.[7] If any *823 period of holiday custody shall conflict with the parties’ regular ’ custody schedule, the holiday schedule shall su-" persede.
• If any parent is going to be away from-the child during his or her periods of physical custody for more than six (6) consecutive hours, the other parent has the first right of refusal. .
• The parties each shall be entitled to one uninterrupted week of summer vacation to coincide with, their regularly scheduled weekend.
• At any time, the parties may amend the custodial schedule contained herein by mutual written agreement.
This appeal followed.
STANDARD OF REVIEW
In child custody cases, the following principles are well-settled:
• Appellate courts will not disturb a trial court’s custody award absent a manifest abuse of discretion.
• “[E]ach child custody case must be viewed inflight of its own particular set of facts and circumstances, with the paramount goal of reaching a decision that is in the best interest of the child.” '
• In determining the best interest of the child, “[e]ach case must be viewed in light of the child’s age, the situation of the parents, and any other-factor relevant to the particular case.” ■
• To aid courts , in making , this factual determination, La. G.C. art. 134 enumerates twelve factors for the court to consider. These 1 «factors have been construed to be nonexclusive, and the trial court has the discretion to determine the relative amount of weight to be given each factor. The court is not required to analyze mechanically all of the dozen factors; rather the court should balance and weigh the factors in view of the evidence presented.
• The best interest of the child standard — codified in La. C.C. arts. 131 and 134 — is “a fact-intensive inquiry requiring the weighing and balancing of factors favoring or opposing custody in the competing parties on the basis of the evidence presented in each case.”
• “Because the trial judge is in the best position to ascertain the best interest of the child based on the" particular circumstances of the particular case, the trial court’s custody determination is entitled to great weight and will not be disturbed by an appellate court absent a clear showing of abuse of discretion.”
Alfonso v. Cooper, 14-0145, p. 22 (La.App. 4 Cir. 7/16/14), 146 So.3d 796, 810 (citing Hanks v. Hanks, 13-1442, pp. 8-9 (La.App. 4 Cir. 4/16/14), 140 So.3d 208, 214-15).
DISCUSSION
On appeal, Mr. Moreau- raises two issues. First, he contends that the custody schedule contravenes the custody evaluator’s recommendations and that the schedule is not consistent with the application of the factors for determining the best interest of the child enumerated in La. C.C. art. 134.[8] Second, he contends that *824 |7the trial court erred by instituting a custody schedule that violates the. “shared equally” mandate of La. R.S. 9:335(A)(2)(b). Specifically, he claims that the record is void of evidence or testimony to support awarding him, only four .days of physical. custody out of .every fourteen days. He therefore contends that the trial court abused its discretion. We address each issue separately.

Expert’s Recommendation

Expert testimony is to be weighed by the trial court the same as any other evidence, Orrill v, Orrill, 08-0400, p. 6 (La.App. 4 Cir. 2/4/09), 5 So.3d 279, 283 (quoting Warlick v. Warlick, 27,389 (La.App. 2 Cir. 9/29/95), 661 So.2d 706, 710) (“[a]fter weighing and evaluating expert and lay testimony, the trial court may accept or reject the opinion expressed by any expert.”). The effect and weight to be given to expert testimony is within the broad discretion of the trial judge. McFall v. Armstrong, 10-1041, p. 8 (La. App. 5 Cir. 9/13/11), 75 So.3d 30, 36-37 (citing Kuebel v. Charvet’s Garden Center, Inc., 09-635 (La.App. 5 Cir. 12/29/09), 30 So.3d 885, 895).[9]
I RIt is well-settled that the trial court is not bound by expert testimony. Fernandez v. Pizzalato, 04-1676, pp. 20-21 (La. App. 4 Cir. 4/27/05), 902 So.2d 1112, 1125 (citing Enlow v. Enlow, 479 So.2d 650, 653 (La.App. 1st Cir.1985)). Moreover, this court has held that “[djeclining to adopt a court-appointed expert’s custody recommendation is not error.” Orrill, supra (citing Monteleone v. Monteleone, 591 So.2d 1228, 1236 (La.App. 4th Cir.1991)).
Dr. van Beyer recommended, that the parties share joint custody — the children to "spend alternating weekends in each parents home and alternating holidays by household and by year. Although Dr, van Beyer’s report also stated that “[t]he children should live in each home *825 50% of the time on a week by week basis,” she testified in part as follows:
I think these are sensitive children. They know what their mother wants and what she expects of them. I think it would be far better for them to be supported-in whatever their own wishes and needs would be, which, at this point, I don’t think they know and can tell you what they know and they can be adamant about what they know. But I think it’s best for the children to have two homes when their parents are apart and participate in both to reset the family structure so that it’s a two-home family structure.
* * *
Q. And your recommendation with respect to custodial visitation is 50-50?
A. Well, I mean, I’ve never quite done anything like this. And I did because the two older children, they’re kind of like almost adults. One of them is technically an adult,... And I think that they should be given the opportunity to make their own decisions about exactly where they want to be. But I also felt, when I wrote this, that it needed to be that they know they have two homes that they can go to and be comfortable in. But, essentially, I believe their mother would have to give them permission for that to happen, and it would be okay for their mother to spend time with their father. I’m not sure how that would happen,
l aOn cross-examination, Dr. van Beyer further testified as follows:
Q, When I heard you on the stand, you said it should be they should have two houses. But then you -said they go every other weekend.
. A. They would be given the choice because now — Sarah is already grown up. But they would be given the choice to go to either parent’s house during the weekdays.. They can have that choice. But every other weekend they would be with the one parent or the other.
* * *
Q. And. when you say in your conclu-sory paragraph that it’s important for them to have two loving homes, and regular access to two loving parents, that does not mean 50-50?
A. Not necessarily, no.
In response to whether she recommended that custody be divided 50-50 on ré-direct examination, Dr. van Beyer testified as follows: "
What I recommended was that the children should know that’they have two homes, not that they have one home and they occasionally get to go visit their father. I did respect the fact that the older two children are going about their own life. And I respected the fact that Claire had difficulty about how her father left the marriage. I understand that. But as far as Lilly was concerned, I did not see any reason why she could not enjoy both parents’homes.
While Dr. van Beyer’s report recommends that the parties share equal physical custody of Lilly, her testimony reveals that she did not intend for custody to be divided equally. Furthermore, as noted above, the trial court is not bound by Dr. van Beyer’s, testimony. It is within the trial court’s broad discretion to accept or reject the expert’s opinion in whole or in part. Accordingly, we find that'the-trial cóurt did hot abuse its discretion in failing to adopt Dr. van Beyer’s recommendation in its entirety.

¡¡Joint Custody

In the absence of a custody agreement between the parents, “the court shall award custody to the parents jointly.” *826 La. C.C. art. 132. Further, La. R.S. 9:335 provides in pertinent part as follows:
A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the,,extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
The primary goal of joint custody is upheld so long as the non-domiciliary parent is assured of frequent and continuing contact with the child. Stephens v. Stephens, 02-0402, p. 7 (La.App. 1 Cir. 6/21/02), 822 So.2d 770, 777. Substantial time, rather than strict equality of time, is mandated by the legislative scheme providing for joint custody of children. Luplow v. Luplow, 41,021, pp. 5-6 (La.App. 2 Cir. 2/28/06), 924 So.2d 1135, 1140 (citing Jones v. Jones, 38,790 (La.App. 2 Cir. 6/25/04), 877 So.2d 1061); Chandler v. Chandler, 48,891, p. 7 (La.App. 2 Cir. 12/13/13), 132 So.3d 413, 417. Louisiana jurisprudence recognizes that an award of joint custody does not necessarily require equal sharing of physical custody. McKenzie v. Cuccia, 04-0112, p. 5 (La.App. 4 Cir. 6/23/04), 879 So.2d 335, 339 (citing Collins v. Collins, 36,629 (La.App. 2 Cir.10/23/02), 830 So.2d 448); see Jones, supra.[10]
In As noted above, Mr. Moreau does not contest the trial court’s award of joint shared custody. Rather, he simply asserts that the time awarded with Lilly is inadequate. The trial court awarded Mr. Moreau physical custody of the minor children as follows: alternating weekends from Thursday at 6:00 p.m. until Sunday at 6:00 p.m.; overnight on Wednesdays before his non-custodial weekend; one week during summer vacation; and specified holidays and special events.
The appellate court in Jones, supra, addressed a similar issue. After being awarded joint custody, the father contended that the trial court’s visitation schedule, which gave him only 102-106 overnight visits per year, was insufficient.[11] On ap *827 peal, he sought to increase his visitation in accordance with the court-appointed psychologist’s recommendations.[12] Jones, 38, 790 at p. 3, 877 So.2d at 1065-66.
|12In affirming the trial court’s child custody award, the appellate court in Jones noted that the mother was the primary caretaker of children and provided them with stability and spiritual and educational guidance. In contrast, the father failed to maintain a stable routine for the children and failed to properly discipline the children. Additionally, -Dr. Baker’s testimony revealed that he backed away from his initial recommendation after evidence was presented which showed that one of the child’s grades suffered as a result of being with her father on school nights. Jones, 38,790 at p. 5, 877 So.2d at 1066.
At the custody hearings in this case, Mr. Moreau testified that he wants more time with his children. Specifically, he testified in part as follows:
I am asking The Court — I have tried over and over again in good faith 100 different ways to work with [Patricia] in having more time with the children. I have not been granted that. I don’t think that [Patricia] and I together are capable of coming up with an agreement that’s best for the children. And I’m asking The Court that I have equal time, just as Dr. van Beyer recommended.
Mr. Moreau further testified that he balances attending the children’s activities, of which there are many, with the responsibilities of owning a business. He stated that he is an active member of the Father’s Club at Lilly’s school and that he enjoys hosting dinners at his house every Wednesday for his children and their friends. Given his current involvement with the children’s lives coupled with the close proximity of his residence to Ms. Moreau’s residence, Mr. Moreau contends he is entitled to shared, equal custody of Lilly.
I iSMs, Moreau testified that she wants custody of Lilly on school days. She testified as follows:
I think it’s an interruption to her on' a Wednesday evening at 2:30. She sits at the gym. I am there every Wednesday because I assist' coaching the sporting events, or I’m there to pick up Claire. I would like to have Lilly on school evenings, because if she has a test on Thursday, it’s a disruption to her schedule during the week. It puts her in a bind and she feels uncomfortable when she’s not prepared for school on the following day.
It is undisputed that Ms. Moreau has been the primary caretaker of the children and that she has been consistently involved in and supportive of the children’s sports and activities.
The trial court considered the testimony and recommendation of Dr. van Beyer, which were based on the best interest of the children standard and the factors enumerated in La. C.C. art. 134. The trial court also heard the parties’ testimony. After considering the evidence presented, the trial court awarded a custody schedule similar to previous interim consent judgments entered into by the parties. The final custody award also included a detailed holiday and special events schedule and one uninterrupted week during the *828 summer; thus granting Mr.‘Moreau additional physical’custody of Lilly. As stated above, the primary goal of joint custody is met if the child is assured of frequent and continuing contact with both parents, and substantial time rather than strict equality of time is required under the legislative scheme, for joint custody. The custody order in the present case provides for frequent and continuing contact with both parents and substantial time with Mr. Moreau. See Langford v. Langford, 49,080, p. 6 (La.App. 2 Cir. 4/9/14), 138 So.3d 101, 106-06 (holding, that the trial court’s allocation' of physical custody on alternating weekends and Wednesdays was not an abuse of discretion.).
‘ As the Second Circuit in the Jone § ease found, this court concludes that the trial court, after considering the testimony and evidence presfented in this ease, found that it was in the best interest of' the children for the parties to share physical custody of the children. Specifically, the court found that its plan would insure that the children had significant and frequent contact with both parents. We thus find no abuse of discretion in the trial court’s judgment awarding joint custody of Lilly with Mr. Moreau having physical custody on alternating weekends and overnight every other Wednesday.

DECREE

For the forgoing reasons, the judgment of the trial court is affirmed.
AFFIRMED

. The trial court’s award of joint shared custody and designation of Ms. Moreau as the domiciliary parent are not contested. Mr. Moreau simply asserts that the awarded time with hilly Moreau is inadequate.

. At the time of this appeal, the parties’ minor children included Claire and Lilly. Mr. Mor-eau, however, concedes that the custody of Claire is not the subject of this appeal. Accordingly, the only issue on' appeal is the custody of Lilly.

. The October 31, 2012 written stipulation provided in part as follows:
Lyle Moreau shall have physical custody, of the minor children, Foster, Sarah, and Lilly every other weekend from Friday when he picks them up from school until Sunday at 6:00 p.m. During these periods, Foster and Sarah shall be allowed to visit with their ■ father at their discretion. Lilly shall have one additional overnight on a school night with her lather on the alternating week when she is'not spending the weekend with her father.' Lilly’s visitation .is not discretionary.

. La. R.S. 9:331 provides as follows:
A. The court may order an evaluation of a party or the child in a custody or visitation proceeding for ■ good- cause shown. The evaluation shall be made by a mental health professional selected by the parties or by the court. The court may render judgment for costs of the evaluation, or any part thereof, against any party or parties, .as it may .consider equitable,
B., The court may order a party or the child to submit to and cooperate in the evaluation, testing, br interview by the mental health professional, The mental health professional shall provide the court and the parties -with a written report. The mental ■health professional shall;serve.as the witness of the court, subject to cross-examination by-a party. ■

. On April 4, 2014, Mr. Moreau filed a Rule to Show Cause and request for a status conference to show why Ms. Moreau should not be held in contempt for violating the December 13, 2013 interim consent judgment. The hearing on the Rule to Show Cause was set for August 12, 2014. This appeal does not involve the contempt motion.

. This part of the December 15, 2014 judgment has since been vacated.

. The judgment included a detailed holiday schedule. The judgment also included a *823 “special event schedule” — for custody on Mother’s Day, Father’s Day, the minor children’s birthdays, and the parents’ birthday. If the special event schedule conflicts "with the parties' regular custody schedule or the holiday schedule, then the special event schedule shall supersede.

. La.- C.C. art. 134 provides that “[t]he court shall consider all relevant factors in determining the best interest of the child” and that *824 "[s]uch factors may include” the following . dozen enumerated factors:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The- capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity, and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment,
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party..,
(8) The home, school, and community history of the child,
(9) The reasonable preference of the child, if the court deems the child to be of sufficient ago to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party;
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.

. See also Dooley v. Dooley, 10-785, p. 8 (La. App. 3 Cir. 2/2/11), 55 So,3d 985, 990 (holding that tile trial court is afforded great discretion and deference in its assessment of expert testimony since it is in the better position to evaluate the best interest of the child ' from "its observations of the witnesses); Moore v. Moore, 41,941, pp, 16-17 (La.App. 2 Cir. 3/6/13), 111 So,3d 1120, 1129 (citing Beene v. Beene, 43,845 (La.App. 2 Cir. 10/22/08), 997 So,2d 169) ("[a]fter weighing and evaluating expert and lay testimony, the trial court is free to accept or reject the expert's opinion and may substitute his or her common sense and judgment when warranted by the record as whole,”).

. See also Mendoza v. Mendoza, 14-954, p. 7 (La.App. 5 Cir. 5/14/15), 170 So.3d 1119, 1123 ("a trial court’s finding that joint custody is in the best interest of the child does not necessarily require an equal sharing of physical custody.”); Moore v. Moore, 47,947, p. 10 (La.App. 2 Cir. 3/6/13), 111 So.3d 1120, 1126 ("even when joint custody is in the best interest of the child, the statute does not mandate an equal sharing of physical custody; substantial time, rather than strict equality of time, is the objective of joint custody.”); Craft v. Craft, 35,785, p. 5 (La.App.2d Cir. 01/23/02), 805 So.2d 1213, 1217 (noting that "joint custody does not necessarily mean a 50/50 sharing of time.”); Brown v. Brown, 96-743, p. 3 (La.App. 3 Cir. 2/26/97), 692 So.2d 458, 459-60 ("joint custody does not mandate fifty-fifty sharing of physical custody; all that is required is substantial equality of time depending on the age of children, parental situations, and other factors relevant to child custody disputes.”); Brazan v. Brazan, 638 So.2d 1176, 1179 (La.App. 1st Cir.1994) (“[a]lthough joint custody means a physical sharing of the child in addition to both parents’ participation in decisions affecting the child’s life, it does not necessarily mean a fifty-fifty sharing of time”).

. The trial court awarded the father visitation with the children as follows:
alternating weekend visitation during the school year from Friday after school until Sunday at 6:00 p.m.; three hours every Wednesday afternoon during the school year; most of the summer, except for three one-week periods and alternating weekends, during which the children will be with [their mother]; and specified holidays.
Jones, 38,790 at pp. 2-3, 877 So.2d at 1065.

. The psychologist, Dr. E.H. Baker, recommended the following visitation schedule: from Thursday evenings until Monday mornings during the school year, and additional weekday visits during the weeks that the father does not have weekend visitation. The Jones court noted that adhering to Dr. Baker's recommendation would result in the children spending an additional 37-45 nights per year with their father. Jones, 38,790 at p, 3, n. 3, 877 So.2d at 1066.